UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICHAEL J. DICENZO, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-30171-MAP |
| | ) | |
| MASSACHUSETTS PROBATE AND | ) | |
| FAMILY COURT et al., | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION TO
PROCEED *IN FORMA PAUPERIS* (Dkt. No. 2) AND FURTHER RECOMMENDATION
FOR SUMMARY DISMISSAL PURSUANT TO 28 U.S.C. § 1915

ROBERTSON, U.S.M.J.

On September 21, 2015, Michael J. Dicenzo, Jr. ("Plaintiff"), an inmate in custody at the

Northeast Correctional Center in Concord, Massachusetts, filed a civil rights complaint naming

as defendants the Berkshire County Probate and Family Court Department of the Massachusetts

Trial Court ("Probate Court"), Massachusetts Attorney General Maura Healey ("Attorney

General"), the Massachusetts Commission on Judicial Conduct ("CJC"), the Executive Office of

the Trial Court of Massachusetts ("EOTC"), and the Berkshire County District Attorney

("District Attorney") (Dkt. No. 6 at 1).  Presently before the court is Plaintiff's motion to proceed

*in forma pauperis* (Dkt. No. 2).  *See* 20 U.S.C. § 636(b)1)(B); Fed. R. Civ. P. 72(b)(1).  For the

reasons that follow, the court recommends allowing Plaintiff's motion to proceed *in forma*

*pauperis* subject to payment.  *See* 28 U.S.C. § 1915(b).  The court further recommends that the

complaint be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and for

lack of subject matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil

Procedure.

I.      Background

Plaintiff filed an amended complaint on October 8, 2015 (the "complaint") (Dkt. No. 6). According to the complaint, Plaintiff brings this action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988 (the attorney's fees provision for section 1983 claims), and Chapter 258 of the Massachusetts General Laws, the Massachusetts Tort Claims Act (*id.* at 1).  In summary, Plaintiff alleges as follows.

Plaintiff complains that Richard A. Simons, a judge in the Probate Court ("Judge Simons"), who presided over a civil matter in the Probate Court filed by Plaintiff (Dicenzo v. Barry, BE09W0282), engaged in various acts of misconduct that intentionally went unaddressed by the Probate Court and the CJC (*id.* at 3).  Plaintiff alleges that Judge Simons and the Probate Court violated his "Constitutional Rights, Civil Rights, and especially [his] 6th Amendment Rights to Compulsory Due Process through intimidation and coercion in all proceedings and in trial" (*id.*).  The EOTC, according to the complaint, failed to fulfill its duties "by deliberately refusing to docket and investigate [Judge] Simons['s] misconduct," (*id.* at 8) which was in violation of the Massachusetts Code of Judicial Conduct, Mass. Gen. Laws ch. 221C, § 2(4) (*id.* at 3).  According to Plaintiff, he filed a formal complaint with the CJC, but it has not responded, thereby further enabling the Probate Court and Judge Simons to violate his rights by "refusing to open and conduct a detailed investigation of all matters and proceedings of Dicenzo v. Barry" (*id.*).

The complaint further alleges that Judge Simons "deliberately refused and neglected to issue any protective order to ensure the safety" of Plaintiff's son M.D. "when it was established

in proceedings, trial and by DCF witness test[i]mony that the child was in danger" (*id.* at 4).[1]
Plaintiff further challenges various rulings and decisions made by Judge Simons during the 2014
trial in Dicenzo v. Barry, listed in fourteen objections in the complaint (*id.* at 5-6). Plaintiff also
complains that Lauren Lee A. Barry should have been charged with multiple criminal violations,
including perjury, based on her testimony during the trial held before Judge Simons (*id.* at 2, 3,
8). In addition, the complaint contains the allegation that "on [n]umerous occasions [Plaintiff]
requested the assistance and investigation [by] the Attorney General" into Judge Simons's
conduct and sent presentment letters to the Attorney General in furtherance of those requests (*id.*
at 6, 7).

As relief, Plaintiff requests the following: (1) joint legal custody of M.D.; (2) regular
unsupervised visitation with M.D. upon release from incarceration; (3) visitation with M.D. at
the correctional center until his release; (4) a protective order preventing any unsupervised
visitation between M.D. and Derek Laforest; (5) that Judge Simons be disciplined for his
misconduct; (6) that Lauren Lee A. Barry be held criminally responsible for certain alleged
crimes; and (7) that his past convictions and restraining orders be removed from his record (*id.* at
10). Plaintiff also seeks damages of "$900.00 a day . . . increasing daily until a Court Judgment
or a clear resolution to these legal matters has been reached" (*id.*), in addition to a demand of
$686,000 (Dkt. No. 1-4).

II.    Discussion

A.   Motion to proceed *in forma pauperis*

Upon review of Plaintiff's financial disclosures in his application to proceed *in forma
pauperis* and his prison account statement, the court concludes that he is without sufficient funds

---

[1] Plaintiff included the full name of his minor son in the complaint, but for purposes of
confidentiality, the court will use the child's initials only.

to pay the $350 filing fee for this action.  Accordingly, the court recommends allowing

Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2).  That does not end the court's

inquiry, however.  Because Plaintiff is a prisoner, he is obligated to make payments toward the

filing fee, pursuant to the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b) ("[I]f a

prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required

to pay the full amount of a filing fee."); *McMann v. Cent. Falls Det. Facility Corp.*, No. 12-

12294-NMG, 2013 WL 2367857, at *1 (D. Mass. May 24, 2013) ("The *in forma pauperis* statute

requires the Court to assess an initial partial filing fee, but collection only occurs 'when funds

exist.'") (quoting 28 U.S.C. § 1915(b)(1)); *see also* 28 U.S.C. § 1915(h) (defining "prisoner").

Therefore, it is further recommended that Plaintiff be assessed an initial partial filing fee of

$22.28, pursuant to 28 U.S.C. § 1915 (b)(1)(A),[2] and that the remainder of the fee be assessed

and collected in accordance with 28 U.S.C. § 1915(b)(2).[3]  *See McMann*, 2013 WL 2367857, at

*1.

     B. Screening of the Complaint under 28 U.S.C. § 1915

     Because Plaintiff is proceeding *in forma pauperis*, his complaint is subject to preliminary

screening under 28 U.S.C. § 1915(e)(2) of the Prison Litigation Reform Act.  This statute directs

federal courts to dismiss an action in which a plaintiff seeks to proceed without prepayment of

fees if, among other things, the action fails to state a claim upon which relief may be granted or

seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. §

---

[2] This initial partial assessment represents 20% of the average monthly deposits in Plaintiff's prison account for the period of April 1, 2015, through September 11, 2015, as reflected by the Treasurer's certification (Dkt. No. 2-1).  28 U.S.C. § 1915(b)(1)(A).

[3] Section 1915(b)(2) provides: "After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid."  28 U.S.C. § 1915(b)(2).

1915(e)(2)(B).  The Prison Litigation Reform Act also authorizes the court to review complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint fails to state a claim, or seeks relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.

In addition, this court has an independent obligation to inquire into whether it has subject matter jurisdiction over a case.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004).  The court liberally construes Plaintiff's complaint because he is self-represented.  *See Rodi v. Southern New England Sch. of Law*, 389 F.3d 5, 13 (1st Cir. 2004) (citing *Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000)).  Even allowing for a liberal construction of Plaintiff's allegations, the court recommends that the complaint be dismissed with prejudice for the reasons set forth below.

1. Immunity bars Plaintiff's claims

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 ("§ 1983"), which provides that "[e]very person" who acts under color of state law to deprive another of "any rights, privileges, or immunities secured by the Constitution and laws" shall be answerable to that person "in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.  "While on its face the statute appears to create no immunities to liability, a literal reading of the statute has never prevailed."  *Donovan v. Fowle*, 762 F. Supp. 2d 186, 198 (D. Me. 2011) (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)).  Because Plaintiff seeks compensatory relief from defendants who are immune from liability, dismissal with prejudice of Plaintiff's complaint is warranted under 28 U.S.C. § 1915(e)(2)(iii) and 28 U.S.C. § 1915A(b)(2).

i. Eleventh Amendment immunity

It is settled law "that neither a state agency nor a state official acting in his [or her] official capacity may be sued for damages in a section 1983 action."  *Wang v. New Hampshire Bd. of Reg. in Med.*, 55 F.3d 698, 700 (1st Cir. 1995) (internal quotation marks omitted).  This is because the Eleventh Amendment bars lawsuits against a State, its departments, and its agencies unless the State has consented to suit.  *Alabama v. Pugh*, 438 U.S. 781, 781 (1978); *see Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought"); *Quern v. Jordan*, 440 U.S. 332, 344 (1979) (Congress did not override state's Eleventh Amendment immunity in enacting § 1983).[4]

Here, Plaintiff has filed suit against the Probate Court, a part of the Massachusetts judicial system.  The Commonwealth of Massachusetts and the Courts of the Commonwealth of Massachusetts, as instrumentalities of the State, are not subject to suit under § 1983, in light of their sovereign immunity grounded in the Eleventh Amendment.  *See Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir. 2002) (holding that appellants' claims under § 1983 against the Massachusetts Trial Court and the Department of Social Services failed "because a state and its agencies are not "persons" within the meaning of § 1983).  Similarly, the CJC is a state agency and therefore immune from suit under § 1983.[5]  *See Wang*, 55 F.3d at 700.  The EOTC "was established to facilitate communication and enable joint leadership of the Trial Court by the

---

[4] The Eleventh Amendment provides, in relevant part: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ."  U.S. Const. Amend. XI.

[5] *See* Massachusetts Commission on Judicial Conduct, http://www.mass.gov/cjc/ ("The Commission on Judicial Conduct (CJC) is the state agency responsible for investigating complaints alleging that a state court judge has engaged in judicial misconduct or has a disability preventing him or her from properly performing judicial duties.") (last visited Nov. 4, 2015).

Chief Justice of the Trial Court and the Court Administrator,"[6] and, thus, as an instrumentality of the state, is also immune from suit. *See Johnson v. Bd. of Bar Overseers of Mass.*, 324 F. Supp. 2d 276, 286 (D. Mass. 2004) (Board of Bar Overseers and Office of Bar Counsel are arms of the state, as they were established "to support the operation of the Courts of Massachusetts," and are protected by Eleventh Amendment against suits for money damages in federal court) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). The Massachusetts Attorney General is also immune from suit given that Plaintiff challenges actions taken by her in her official capacity. *See Johnson*, 324 F. Supp. 2d at 286.

Although "[a] State may waive its sovereign immunity by consenting to be sued in federal court," *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 49 (1st Cir. 2003), such waivers must be unequivocal. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). Sovereign immunity has not been waived by defendants or the Commonwealth of Massachusetts. Accordingly, Plaintiff's claims against the Probate Court, the EOTC, the CJC, and the Attorney General in her official capacity must be dismissed with prejudice insofar as Plaintiff seeks compensatory damages against them. The non-compensatory relief that Plaintiff seeks, namely, injunctive and declaratory relief relating to his trial in the Probate Court, is addressed below.

    ii. <u>Absolute judicial immunity</u>

While not a named defendant, Judge Simons is, in large part, the subject of Plaintiff's complaint. To the extent Plaintiff's lawsuit is based on Judge Simons's judicial acts, absolute judicial immunity bars any such claim. *See Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) ("[I]mmunity of judges for acts within the judicial role is [ ] well established."); *Becks v.*

---

[6] *See* Massachusetts Court System Executive Office of the Trial Court, http://www.mass.gov/courts/court-info/trial-court/exec-office/ (last visited Nov. 4, 2015).

*Plymouth County Superior Court*, 511 F. Supp. 2d 203, 206 (D. Mass. 2007) ("Absolute

immunity from civil liability applies to any judicial officer for any normal and routine judicial

act."); *Allard v. Estes*, 197 N.E. 884, 886 (Mass. 1935) ("[E]very judge whether of a higher or

lower court is exempt from liability to an action for any judgment or decision rendered in the

exercise of jurisdiction vested in him by law.").  Such "immunity is founded upon considerations

of public policy to the end that the administration of justice may be independent, based upon free

and unbiased convictions and not influenced by apprehension of personal consequences."

*Allard*, 197 N.E. at 886.  "Like other forms of official immunity, judicial immunity is an

*immunity from suit*, not just from ultimate assessment of damages."  *Mireles v. Waco*, 502 U.S.

9, 11 (1991) (emphasis supplied).

As the First Circuit recently held, absolute immunity applies to "judges performing

judicial acts within their jurisdiction," and the protection it offers applies even if the official

"acted maliciously and corruptly in exercising his judicial . . . functions" or "in the presence of

grave procedural errors."  *Goldstein v. Galvin*, 719 F. 3d 16, 24 (1st Cir. 2013) (internal

quotation marks omitted); *see Mireles*, 502 U.S. at 11 (absolute judicial immunity "is not

overcome by allegations of bad faith or malice").  Here, all of Judge Simons's allegedly

wrongful acts involve judicial functions, including the adjudication of disputes, weighing of

evidence, making factual findings, reaching legal determinations, and expounding reasons for

decisions (Dkt. No. 6 at 5-6), all of which are acts regularly performed by a judge within the

scope of his or her jurisdiction.  *See Goldstein*, 719 F. 3d at 25.  Regardless of any allegations of

malice, prejudice, or bias or other alleged errors in connection with the issuance of Judge

Simons's rulings, he is immune from suit, and the complaint, to the extent it seeks relief based on

his alleged actions, must therefore be dismissed.[7]  *See, e.g.*, *Beck v. Plymouth Cty. Superior Court*, 511 F. Supp. 2d 203, 206 (D. Mass. 2007) (state-court judges entitled to absolute judicial immunity from liability in § 1983 action).

iii. Prosecutorial immunity

Immunity of a prosecutor is "based upon the same considerations that underlie the common-law immunities of judges . . .  acting within the scope of their duties." *Imbler v. Pachtman*, 424 U.S. 409, 422-423(1976).  Absolute immunity applies to prosecutorial actions that are "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009).  A functional test is applied when determining whether a prosecutor's activities merit immunity.  *Forrester v. White*, 484 U.S. 219, 229 (1988).  This test is to the effect that a prosecutor is entitled to absolute immunity when "act[ing] within the scope of his [or her] duties in *initiating and pursuing a criminal prosecution*." *Imbler*, 424 U.S. at 410 (emphasis added).  In other words, prosecutors are absolutely immune from suit when deciding whether to prosecute.  *See, e.g.*, *Beck*, 511 F. Supp. 2d at 206 (decision by prosecutors to decline to initiate an investigation or prosecution at the request of the plaintiffs was within their discretion and fell within the scope of protected activity); *see also Johnson*, 324 F. Supp. 2d at 287 ("'[S]tate officials performing prosecutorial functions – including their decision to initiate administrative proceedings aimed at legal sanctions – are entitled to absolute immunity as well.'") (quoting *Wang*, 55 F.3d at 701)).

Here, while the complaint contains no allegations implicating the District Attorney, it

---

[7] The only exception to judicial immunity occurs where a court acts "in the clear absence of all jurisdiction." *Malachowski v. City of Keene*, 787 F.2d 704, 710 (1st Cir.1986).  There are no allegations in this case that Judge Simons was acting outside his jurisdictional authority.  Rather, all of the alleged acts occurred in a case filed in the Probate Court, the court to which Judge Simons was appointed.

asserts that Lauren Lee A. Barry should have been charged with multiple criminal violations. Given that the District Attorney is a named defendant, insofar as Plaintiff is alleging that the District Attorney should have prosecuted Ms. Barry for certain alleged crimes, the District Attorney is immune from suit on such a basis, and any such claim should be dismissed.  *See Imbler*, 424 U.S. at 410, 420, 430.  The Attorney General also is entitled to absolute immunity as to any decision by her on whether to initiate administrative proceedings aimed at legal sanctions against Judge Simons.  *See Johnson*, 324 F. Supp. 2d at 287.

    2. Jurisdictional bars to Plaintiff's claims

    i. *Rooker-Feldman* doctrine

    Under the *Rooker-Feldman* doctrine, a federal district court does not have subject matter jurisdiction when a lawsuit seeks, in essence, to overturn a state court judgment.  *Geiger v. Foley Hoag LLP Retirement Plan*, 521 F.3d 60, 65 (1st Cir. 2008); *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) (the doctrine is a jurisdictional bar to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").  "Instead, the proper avenue for such a challenge is to the state's highest court and from there to the United States Supreme Court [if there were federal claims asserted]."  *Bradbury v. GMAC Mortg., LLC*, 780 F. Supp. 2d 108, 113 (D. Me. 2011).

    This court lacks jurisdiction because Plaintiff seeks relief from a state court judgment for alleged errors and misconduct committed by a state court judge.  The essence of Plaintiff's claim is that Judge Simons erred in conducting the trial of Dicenzo v. Barry, particularly with respect to the admissibility of evidence (Dkt. No. 6 at 5-6).  These allegations fall within the prohibition of the *Rooker-Feldman* doctrine, and, as a result, this court lacks jurisdiction to consider any

claims by Plaintiff that are premised on such allegations.  *See, e.g.*, *Beck*, 511 F. Supp. 2d at 206-

207 (applying the *Rooker-Feldman* doctrine); *see also, e.g.*, *Puerto Ricans for Puerto Rico Party*

*v. Dalmau*, 544 F.3d 58, 68 (1st Cir. 2008) (plaintiff precluded from "'seeking review and

rejection'" of state court judgments in federal court) (quoting *Exxon Mobile Corp.*, 544 U.S. at

291 (2005)).

    ii. <u>Domestic relations exception</u>

    In *Ankebrandt v. Richards*, 504 U.S. 689 (1992), the Supreme Court held that "the

domestic relations exception . . . divests the federal courts of power to issue divorce, alimony,

and child custody decrees."  *Id.* at 703.  The underlying justification for this jurisdictional

exception is that "state courts are more eminently suited to work of this type than are federal

courts, which lack the close association with state and local government organizations dedicated

to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees."

*Id.* at 704; *see also Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003) ("[The

domestic relations] exception prohibits federal courts from issuing or altering divorce, alimony,

and child custody decrees."); *Sutter v. Pitts*, 639 F.2d 842, 843 (1st Cir. 1981) ("It is firmly

established that the federal courts do not have diversity jurisdiction to grant divorces, determine

alimony and support obligations, or resolve conflicting claims of divorced parents to the custody

of their children.").

    Plaintiff's requests for relief seek to place matters of child custody before this court.  The

court lacks the power to address such domestic relations issues.  Further, "[t]he First Circuit has

stated that even if a case is not strictly fit for the application of the domestic relations exception,

principles of comity would still make abstention appropriate."  *Mojica v. Noguereas-Cartagena*,

573 F. Supp. 2d 520, 523 (D.P.R. 2008) (citing *Armstrong v. Armstrong*, 508 F.2d 348 (1st Cir.

1974)); *see also LaMontage v. LaMontagne*, 394 F. Supp. 1159, 1169 (D. Mass. 1975) (holding that reasons of comity and common sense made abstention appropriate where, although father of minor child sued mother, probation officers and others alleging violation of Eight and Fourteenth Amendment rights, the action was essentially a domestic relations matter).  Because Plaintiff's claims all revolve around the adjudication of a domestic relations matter, pursuant to the domestic relations exception, this court should abstain from exercising jurisdiction over this case.

    3. Subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332

    Finally, even if the *Rooker-Feldman* and domestic relations doctrines did not deprive the court of subject matter jurisdiction over this case, which they do, the court would still lack the authority to entertain Plaintiff's claims.  Federal courts are courts of limited jurisdiction, "and the requirement of subject-matter jurisdiction 'functions as a restriction on federal power.'" *Fafel v. Dipaola*, 399 F.3d 403, 410 (1st Cir. 2005) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).  The federal courts generally have subject-matter jurisdiction over civil actions in which the parties are of diverse citizenship and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332 ("§ 1332"), and civil actions arising under federal laws, *see* 28 U.S.C. § 1331 ("§ 1331").  "The existence of subject-matter jurisdiction 'is never presumed.'" *Fafel*, 399 F.3d at 410 (quoting *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998)).  In order for jurisdiction to exist under § 1331, a plaintiff must assert a claim arising under federal law.  A civil rights claim pursuant to § 1983 may constitute such a claim.  However, for the reasons set forth above, the defendants are immune from suit under § 1983.  Because the complaint does not assert any other cognizable federal claim, the complaints fails to assert a claim arising under federal law for purposes of § 1331 jurisdiction.

Section 1332 grants a district court original jurisdiction over cases where the amount in controversy exceeds $75,000 and the case is between "citizens of different States." 28 U.S.C. §1332(a)(1). Complete diversity of citizenship between the parties is required. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Complete diversity does not exist where any defendant and any plaintiff are domiciled in the same state. *See id.* Here, Plaintiff acknowledges that he is a citizen of Massachusetts (Dkt. No. 1-4). *See generally Hall v. Curran*, 599 F.3d 70, 72 (1st Cir. 2010) ("In cases involving prisoners, the courts presume that the prisoner remains a citizen of the state where he was domiciled before his incarceration, even if he is subsequently incarcerated in a different state."). Thus, Plaintiff is a resident of Massachusetts and more than one of the defendants is a Massachusetts agency. Accordingly, complete diversity of citizenship does not exist, and jurisdiction does not arise under § 1332. Because the court lacks jurisdiction pursuant to § 1332 or § 1331, dismissal of the complaint for lack of subject-matter jurisdiction is also appropriate. *See* Fed. Civ. P. 12(h)(3).

III.    Conclusion

For these reasons, it is this court's RECOMMENDATION that Plaintiff's Motion to Proceed *In Forma Pauperis* be granted, but that the case be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A, and Rule 12(h)(3) of the Federal Rules of Civil Procedure.[8]

---

[8] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: November 19, 2015

---

F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.